UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 19-cv-21986-FAM

JAMES ERIC McDONOUGH,
     Plaintiff,

vs.

CARLOS GARCIA,
GARLAND WRIGHT, AND
THE CITY OF HOMESTEAD,

     Defendants.

_____/

## SECOND AMENDED COMPLAINT

### Jurisdiction and Venue

1.     This is an action for damages in excess of $15,000.00, exclusive of costs and interest, and a civil rights claim pursuant to 42 U.S.C. § 1983 and the First, Fourth and Fifth Amendments to the United States Constitution.

2.     Venue properly lies in Miami-Dade County as the incident in question occurred in the city of Homestead, Florida in Miami-Dade County.

3.     All conditions precedent to the filing of this action pursuant to §768.26 Florida Statutes have been met.

### Parties

4.     JAMES ERIC McDONOUGH (hereafter "McDONOUGH") was at all material times a resident of Miami-Dade County, Florida and a citizen of the United States.

5.     Defendant CITY OF HOMESTEAD (hereafter "HOMESTEAD") is a municipal corporation and political subdivision of the State of Florida.

6.     Defendant GARLAND WRIGHT was at all material times a police officer with the City of Homestead acting under color of state law and is being sued in his individual capacity.

1

7.      Defendant CARLOS GARCIA was at all material times a police officer with the City of Homestead acting under color of state law and is being sued in his individual capacity.

### Statement of Facts

### July 2016 Removal from Council Meeting

8.      The Homestead City Council meets once a month in the Council Chambers at Homestead City Hall to conduct city business.  A portion of each meeting is set aside for public comment during which members of the public are invited to speak directly to the Mayor and City Council on any matters of public interest about which the member wishes to speak.

9.      Members of the public are invited to speak for three minutes during the public comment section of the meetings.

10.      McDONOUGH would come to City Council meetings to speak on matters that he felt were of public interest to HOMESTEAD.

11.      On July 27, 2016, McDONOUGH once again attended and spoke during public comment at that date's City Council meeting.  Posted at the top of the agenda for that meeting was a Decorum Policy enacted by the Homestead City Council in 2015, setting forth procedures regarding the conduct of persons who appear before that body. That posting stated in its entirety the following:

> DECORUM POLICY:
> Any person making impertinent or slanderous remarks, or who becomes boisterous while addressing the council, shall be barred from further audience before the council by the Mayor, unless permission to continue or again address the council be granted by the majority vote of the council members present. No clapping, applauding, heckling or verbal outbursts in support or opposition to a speaker or his or her remarks shall be permitted. No signs or placards which may harm or obstruct the view of others shall be allowed in the council chambers. Persons exiting the council chambers shall do so quietly.

12.      That Policy (hereafter the July 27th Decorum Policy") contained two noteworthy omissions:

(a)   While asserting that "making impertinent…remarks" or "becom[ing] boisterous" constituted grounds for "the Mayor" to "bar[…]" a speaker "from further audience before the council," it provided no definition of "impertinent remarks" or "boisterous" behavior; and

(b)   It failed to set forth any procedure[s] as to when, how or on what basis a "barred" speaker could seek to obtain a "majority vote of the council members present" granting him "permission to . . .  again address the council" at some time in the future.

13.     The July 27th Decorum Policy was the same Policy that was posted at the top of the agenda for every Homestead City Council meeting held during the year 2016, except for the November, 2016 meeting.

14.     Four months earlier, on April 20, 2016, the City Council had approved a resolution "enacting revised comprehensive council meeting and agenda procedures" (Resolution No. R2016-04-42) (hereafter "the revised Resolution") to "supersede and replace all previous Resolutions regarding Council meeting procedures." Under a section headed "City Council Meetings," the revised Resolution deleted the language contained in the July 27th Decorum Policy and, in its stead, set forth the following:

Rules of Decorum:

In order to ensure that meetings of the City Council may be conducted in a manner that allows the business of the City to be effectively administered the following rules of decorum shall be followed at all meetings of the City Council:
(a) No individual shall make slanderous or unduly repetitive remarks or engage in any other form of behavior that disrupts or impedes the orderly conduct of the meeting as determined by the Mayor and or Sergeant at Arms.
(b) No clapping applauding heckling or verbal outbursts in support or opposition to a speaker or his or her remarks shall be permitted
(c) No signs or placards shall be permitted in the Council Chambers
(d) Individuals addressing the Mayor and Council must first be recognized by the Mayor and must do so utilizing the designated podium in the Council Chamber No more than one person may address the Council at a time unless specifically permitted by the Mayor. Only those individuals recognized by the Mayor may stand at the podium
(e) No person may stand in or on the isles the well or the dais. Individuals waiting to be recognized shall wait in an area designated by the City

3

(f) Persons exiting the council chambers shall do so quietly
(g) Any individual determined to have violated the Rules of Decorum as determined
by the Mayor or Sergeant at Arms may be required to leave the Council Chambers.

15.     The revised Resolution changed the rules of decorum to be followed at City Council

meetings in the following relevant ways:

(a) it eliminated "making impertinent …remarks'" and "becom[ing] boisterous" as

grounds for barring a speaker from addressing the City Council; and

(b) it eliminated the requirement that for a barred speaker "to continue or again address

the council" the speaker must obtain "permission…granted by the majority vote of the council

members present."

16.     The new rules of decorum set out in the revised Resolution were not posted at the

top of the agenda for any City Council meeting until November 16, 2016, when they were posted

for the first time under the heading "Decorum Policy."  The July 27th decorum policy was again

posted on the December, 2016 meeting agenda until it was finally replaced on the January 2017

meeting agenda.

17.     On July 27, 2016, McDONOUGH rose and began to speak, during the public

comment section, about issues involving the Homestead Police Department (hereafter "HPD").

18.     During that time, he spoke of the accountability of HPD. He: complained that

Officer Murguido falsified a police report concerning an individual named Rosemary Brackett;

supported bodycams; complained that the Chief of Police had falsified destruction logs;

complained that the Chief had retaliated against a citizen for saying the Chief had committed

misconduct in office; complained that there was rampant nepotism within HPD; and finally stated

to Councilman Maldonado that if he had something to say to him (McDONOUGH) that he should

say it in public and not behind his back.

4

19.     After approximately two and a half minutes had passed, WRIGHT approached McDONOUGH, stopped his comments, prevented him from speaking further and ordered him to leave the council chambers.

20.     WRIGHT pushed McDONOUGH and was directly behind as he escorted McDONOUGH out of the council chambers. WRIGHT further prevented McDONOUGH from remaining at the meeting.

21.     WRIGHT refused to advise McDONOUGH of the reason for being removed.

22.     Once outside the Chambers, in a hallway and while walking away, McDONOUGH stated he would sue WRIGHT.

23.     In response, WRIGHT chased down McDONOUGH and blocked his egress from the building.

24.     While blocking McDONOUGH's egress, WRIGHT requested McDONOUGH to not speak as he had.  McDONOUGH then requested that WRIGHT not violate his First Amendment rights, to which WRIGHT responded by threatening to violate McDONOUGH's First Amendment right if McDONOUGH wanted him to.

25.     During his comments before the City Council on July 27, 2016, and upon being escorted from the chambers, all of which were captured on video, McDONOUGH did not disrupt or impede the orderly conduct of the meeting or engage in any behavior that could be deemed criminal or that would in any way support a determination of probable cause to believe, or even create a reasonable suspicion that he had committed a crime.  Further, McDONOUGH's comments were not impertinent, slanderous, boisterous or unduly repetitive.

26.     Upon being escorted from the City Hall building neither WRIGHT nor any other HPD Officer advised McDONOUGH that he was not allowed to return to City Hall or to speak in front of the City Council.

**August 2016 Trespass Warning and Arrest**

27.     On August 23, 2016, McDONOUGH published an article critical of WRIGHT's actions against him at the July 2016 meeting and outlined WRIGHT's constitutional violations.

28.     On August 24, 2016, before the council meeting, WRIGHT along with City Manager George Gretsas, Mayor Jeff Porter, HPD Chief Alexander Rolle, HPD Major Scott Kennedy, City Attorney Matthew Pearl, and unnamed others met in the City Manager's office to discuss, among other things, how to prevent McDONOUGH from speaking at that evening's meeting.

29.     It was decided that the July 27th decorum policy would be enforced and McDonough would be "trespassed" and prohibited from entering into City Hall and/or speaking at the Council meeting.

30.     Chief Rolle, based on McDONOUGH's comments at the last meeting, ordered McDONOUGH "trespassed" meaning he was to be prevented from entering City Hall and from attending and/or speaking at the August 24, 2016 Council meeting.

31.     On August 24, 2016, after the meeting in the City Manager's office, McDONOUGH returned to City Hall to speak at the City Council meeting.  Immediately upon entering City Hall, McDONOUGH was met by WRIGHT, Detective MATA and Officer John Monaco and was ordered out of the building.

32.     WRIGHT told McDONOUGH that he was being "trespassed" because of his comments and behavior at the last meeting and that he had to leave the premises of City Hall until he received permission to come back.

33.     The Homestead Police Department, through Chief of Police Al Rolle, ordered and/or ratified the enforcement of the trespass order and approved of the reasoning behind the order before the order was given that prevented McDONOUGH's entrance into the building, thus

stopping him from speaking and/or attending the City Council meeting that evening or at any future meeting.

34.     When McDONOUGH asked how he could get back in, he was told to write a letter.

35.     McDONOUGH obeyed WRIGHT's order and began walking on the sidewalk of City Hall towards his vehicle when WRIGHT yelled that the trespass included the parking lot.

36.     While continuing to walk away and without stopping, McDONOUGH raised his left middle finger in the air and stated, "I'm leaving buddy, bye-bye."  At no time did McDONOUGH grab his genitals or scream any obscenities.

37.     Upon observing McDONOUGH's actions, WRIGHT and MONACO followed him.  WRIGHT instructed McDONOUGH to stop, turn around and place his hands behind his back.  When McDONOUGH asked what he was being arrested for, Monaco said for disorderly conduct and placed the handcuffs on him.

38.     GARCIA also advised McDONOUGH that he was under arrest.  GARCIA, under oath, authored the arrest form charging McDONOUGH with trespass after warning and disorderly conduct.

39.     There were at least three supplemental police reports written on the incident: GARCIA wrote that there were four female pedestrians in the parking lot and others entering the City Hall building who stopped to observe McDONOUGH's breach of the peace; that McDONOUGH turned to the police officers grabbed his genitals, raised his right middle finger and yelled an obscenity.

40.     Monaco wrote that at the time of McDONOUGH's actions there was a woman with three children going into City Hall; there were several people on the steps and approximately ten people in the parking lot; that McDONOUGH had grabbed his genitals while raising his middle finger and yelled an obscenity towards the officers; that WRIGHT told him that he (WRIGHT)

7

was going to place McDONOUGH under arrest; that WRIGHT walked over to McDONOUGH and advised him he was under arrest.

41.     WRIGHT wrote that there were several citizens walking into the building and several citizens in the parking lot area, all who stopped and witnessed McDONOUGH's actions; that McDONOUGH raised his middle finger and yelled an obscenity at the officers; that he and Monaco walked over to McDONOUGH who was placed under arrest.

42.     This entire episode was captured on video.  At the time there was no one entering City Hall.  There were two women leaving City Hall who did not see what McDONOUGH had done or react to what he said, nor were there any citizens in the parking lot area who noticed McDONOUGH.  It was only the arrest of McDONOUGH by HPD that drew anyone's attention. The video also clearly shows that McDONOUGH never grabbed his genitals as the officers claimed nor shouted any obscenities.

43.     At no time did McDONOUGH engage in any action that could be considered a breach of the peace.

44.     At no time did McDONOUGH refuse to leave the premises of City Hall once directed to do so by WRIGHT.  The only reason McDONOUGH did not leave the City Hall premises was that he was prevented from doing so by the police due to his arrest for disorderly conduct.

45.     Monaco excessively tightened the handcuffs on McDONOUGH and repeatedly twisted them deliberately causing pain to McDONOUGH even though McDONOUGH was fully cooperative.  Monaco also refused to loosen the handcuffs after requests and complaints from McDONOUGH that the handcuffs were cutting off circulation in his left hand.

46.     After discovery was conducted in the criminal case, the charges of disorderly conduct and trespass after warning were eventually dismissed by the Miami-Dade State Attorney.

**September 2016 Arrest**

47.     While awaiting trial on the disorderly conduct and trespass charges, McDONOUGH posted comments on a website known as LEO AFFAIRS.

48.     In the posts McDONOUGH made comments about Monaco who was involved and had been a witness to the incident on August 24, 2016.

49.     In the posts, McDONOUGH wrote about Monaco's comments at a previous Council meeting concerning officers wearing body cameras; he warned that any retaliation toward him would be dealt with swiftly, harshly and lawfully; he called Monaco a liar and a coward; he commented about posting Monaco's home address and he posted the YouTube video from a Council meeting where Monaco provided his home address on the public record.

50.     Monaco reported this to HPD Internal affairs where the police attempted several undercover calls to entrap McDONOUGH into revealing Monaco's address which they believed to be a violation of Florida Statutes. McDONOUGH refused to reveal the address but did refer the undercover officer to a public YouTube posting.

51.     Based upon the information provided by Monaco, McDONOUGH was arrested on September 1, 2016 for cyberstalking and tampering with a witness by HPD Detective David Mata.

52.     The Miami-Dade State Attorney dismissed both charges finding that McDONOUGH never threatened to take some action if the disorderly conduct/trespass charges were pursued.  Additionally, there was no cyberstalking that would cause any emotional distress or that served no legitimate purpose.

### <u>COUNTS</u>

**Count I - Violation of the First Amendment to the United States Constitution, Pursuant to 42 U.S.C. §1983**
**(Against Defendant WRIGHT, individually, on July 27, 2016)**

53.     Plaintiff McDONOUGH realleges and incorporates herein by reference paragraphs 1-52.

54.     McDONOUGH, in speaking on matters of public interest during the public comment section at the Homestead City Council meeting on July 27, 2016, without disrupting or impeding the orderly conduct of the meeting, was exercising his rights under the First Amendment and was not engaging in any behavior or speech that could be considered impertinent, slanderous, boisterous or unduly repetitive nor deemed criminal or in any way support a determination of probable cause to believe, or even reasonable suspicion that, he was committing a crime.

55.     In direct response to, and to punish and retaliate against, McDONOUGH for his exercise of his First Amendment rights during the July 27, 2016, City Council meeting, Defendant WRIGHT, acting under color of state law, removed McDONOUGH involuntarily from the Council Chambers and City Hall without permitting him to finish his comments before the Council.

56.     As a direct and proximate result of Defendant WRIGHT's actions, McDONOUGH suffered damages from the denial of his constitutional rights under the First Amendment to the United States Constitution and is accordingly entitled to relief under 42 U.S.C. §1983.

WHEREFORE, McDONOUGH is entitled to:

A.  Compensatory damages for the physical and mental injuries suffered;

B.  Punitive damages;

C.  Reasonable expenses incurred in the litigation, including reasonable attorney and expert fees, pursuant to 42 U.S.C. §1988; and

D.  Any other remedy the Court deems appropriate.

**Count II – Violation of the First Amendment to the United States Constitution, Pursuant to 42 U.S.C. §1983**
**(Against THE CITY OF HOMESTEAD)**

57.     Plaintiff McDONOUGH realleges and incorporates herein by reference paragraphs 1-52.

58.     The City of Homestead, through its policy-maker, ordered and/or ratified the enforcement of a trespass order and approved the reasoning before the order was given, that prevented McDONOUGH's entrance into City Hall and prohibited him from speaking to the City Council.

59.     The decision by the policy-maker to prohibit McDONOUGH's entrance into City Hall and to place him under an open-ended trespass order, prospectively barred McDONOUGH from reappearing and speaking at any Homestead City Council meeting at any time in the future.

60.     The trespass order had the effect of denying McDONOUGH his rights of freedom to speak on matters of public interest and to petition for redress of grievances under the First Amendment by subjecting McDONOUGH to a prior restraint of the exercise of his First Amendment rights.

61.     The decision by Defendant HOMESTEAD's final policy-making authority, constituted deliberate indifference to McDONOUGH's First Amendment rights.

62.     The order to trespass McDONOUGH by and through Defendant HOMESTEAD's final policy-making authority was the primary moving force behind the deprivation of McDONOUGH's First Amendment rights.

63.     As a direct and proximate result of Defendant HOMESTEAD's decisions, customs and policies, McDONOUGH suffered damages from the denial of his constitutional rights under the First Amendment to the United States Constitution and is accordingly entitled to relief under 42 U.S.C. §1983.

WHEREFORE, McDONOUGH is entitled to:

A.  Compensatory damages for the physical and mental injuries suffered.

      B.  Reasonable expenses incurred in the litigation, including reasonable attorney and expert fees, pursuant to 42 U.S.C. §1988; and

      C.  Any other remedy the Court deems appropriate.

**Count III - Violation of the First Amendment to the United States Constitution, Pursuant to 42 U.S.C. §1983
(Against Defendant WRIGHT, individually on August 24, 2016)**

64.    Plaintiff McDONOUGH realleges and incorporates herein by reference paragraphs 1-52.

65.    McDONOUGH, in speaking on matters of public interest during public comment at the Homestead City Council meeting on July 27, 2016, without disrupting or impeding the orderly conduct of the meeting, was exercising his rights under the First Amendment and was not engaging in any behavior or speech that could be considered impertinent, slanderous, boisterous or unduly repetitive nor deemed criminal or in any way support a determination of probable cause to believe, or even reasonable suspicion that, he was committing a crime.

66.    In direct response to, and to punish and retaliate against, McDONOUGH for his exercise of his First Amendment rights during the July 27, 2016, City Council meeting and/or for later publishing an article critical of WRIGHT, Defendant WRIGHT, acting under color of state law, prevented McDONOUGH from speaking before the City Council on August 24, 2016 and issued an open-ended trespass order.

67.    The trespass order, which barred McDONOUGH from reappearing and speaking at any Homestead City Council meeting in the future, had the effect of denying McDONOUGH his rights of freedom to speak on matters of public interest and to petition for redress of grievances under the First Amendment by subjecting McDONOUGH to a prior restraint of the exercise of his First Amendment rights.

68.     As a direct and proximate result of Defendant WRIGHT's actions, McDONOUGH suffered damages from the denial of his constitutional rights under the First Amendment to the United States Constitution and is accordingly entitled to relief under 42 U.S.C. §1983.

WHEREFORE, MCDONOUGH is entitled to:

A.  Compensatory damages for the physical and mental injuries suffered;

B.  Punitive damages;

C.  Reasonable expenses incurred in the litigation, including reasonable attorney and expert fees, pursuant to 42 U.S.C. §1988; and

D.  Any other remedy the Court deems appropriate.

**Count IV- False Arrest**
**(State Tort against defendant HOMESTEAD for actions on August 24, 2016)**

69.     Plaintiff McDONOUGH realleges and incorporates herein by reference paragraphs 1-52.

70.     On or about August 24, 2016, while acting in the course of their duties as police officers employed by HPD, Officers WRIGHT, Monaco, GARCIA and others, arrested McDONOUGH for disorderly conduct and trespass after warning.

71.     HOMESTEAD is responsible for the actions of its police officers employed by the HPD, while those officers are engaged within the course and scope of their employment.

72.     The officers physically deprived McDONOUGH of his freedom and liberty both at the scene of the arrest and continuing at the Miami-Dade County Jail.

73.     McDONOUGH did not consent to the arrest and deprivation of liberty by HPD officers and said actions were against the will of McDONOUGH.

74.     The restraint and arrest of McDONOUGH by Officers WRIGHT, MONACO, GARCIA and other officers of the Homestead Police Department was unlawful and objectively

unreasonable as it was not based on probable cause nor based upon lawfully issued process and was without a valid warrant.

75.    As a direct and proximate result of HPD's actions McDONOUGH suffered both physical and mental injuries and is entitled to relief.

Wherefore the Plaintiff is entitled to:

A.  Compensatory damages for the physical and mental injuries suffered.

B.  Costs of this action.

C.  Any other remedy the Court deems appropriate.

**Count V- Violation of the Fourth Amendment to the United States Constitution, Pursuant to 42 U.S.C. §1983**
**(Against Defendant WRIGHT, individually, for false arrest on August 24, 2016)**

76.    Plaintiff McDONOUGH realleges and incorporates herein by reference paragraphs 1-52.

77.    On or about August 24, 2016, while acting under the color of state law as a police officer employed by HPD, Defendant WRIGHT arrested McDONOUGH for disorderly conduct and trespass after warning.

78.    Defendant WRIGHT physically deprived McDONOUGH of his freedom and liberty both at the scene of the arrest and continuing at the Miami-Dade County Jail.

79.    McDONOUGH did not consent to the arrest and deprivation of liberty by Defendant WRIGHT and said actions were against the will of McDONOUGH.

80.    The restraint, search and arrest of McDONOUGH by Defendant WRIGHT, was unlawful and objectively unreasonable as it was not based on probable cause nor based upon lawfully issued process and was without a valid warrant.

14

81.     The restraint, search and arrest of McDONOUGH by Defendant WRIGHT deprived McDONOUGH of his constitutional rights under the Fourth Amendment to the United States Constitution to be free from unreasonable searches and seizures.

82.     As a direct and proximate result of the violation of McDONOUGH's constitutional rights by Defendant WRIGHT, McDONOUGH suffered both physical and mental injuries and is entitled to relief under 42 U.S.C. §1983.

Wherefore the Plaintiff is entitled to:

A.  Compensatory damages for the physical and mental injuries suffered.

B.  Punitive damages.

C.  Reasonable expenses incurred in the litigation, including reasonable attorney and expert fees, pursuant to 42 U.S.C. §1988.

D.  Any other remedy the Court deems appropriate.

**Count VI- Violation of the Fourth Amendment to the United States Constitution, Pursuant to 42 U.S.C. §1983
(Against Defendant GARCIA, individually, on August 24, 2016)**

83.     Plaintiff McDONOUGH realleges and incorporates herein by reference paragraphs 1-52.

84.     On or about August 24, 2016, while acting under the color of state law as a police officer employed by HPD, Defendant GARCIA arrested McDONOUGH for trespass after warning and disorderly conduct.

85.     Defendant GARCIA physically deprived McDONOUGH of his freedom and liberty both at the scene of the arrest and continuing at the Miami-Dade County Jail.

86.     McDONOUGH did not consent to the arrest and deprivation of liberty by Defendant GARCIA and said actions were against the will of McDONOUGH.

87.     The restraint, search and arrest of McDONOUGH by Defendant GARCIA was unlawful and objectively unreasonable as it was not based on probable cause nor based upon lawfully issued process and was without a valid warrant.

88.     The restraint, search and arrest of McDONOUGH by Defendant GARCIA deprived McDONOUGH of his constitutional rights under the Fourth Amendment to the United States Constitution to be free from unreasonable searches and seizures.

89.     As a direct and proximate result of the violation of McDONOUGH's constitutional rights by Defendant GARCIA, McDONOUGH suffered both physical and mental injuries and is entitled to relief under 42 U.S.C. §1983.

Wherefore the Plaintiff is entitled to:

A.  Compensatory damages for the physical and mental injuries suffered.

B.  Punitive damages.

C.  Reasonable expenses incurred in the litigation, including reasonable attorney and expert fees, pursuant to 42 U.S.C. §1988.

D.  Any other remedy the Court deems appropriate.

**Count VII- False Arrest**
**(State Tort against Defendant HOMESTEAD for actions on September 1, 2016)**

90.     Plaintiff McDONOUGH realleges and incorporates herein by reference paragraphs 1-52.

91.     On or about September 1, 2016, while acting in the course of their duties as police officers employed by HPD, Detective Mata and others arrested McDONOUGH for cyberstalking and tampering with a witness.

92.     HOMESTEAD is responsible for the actions of its police officers employed by the HPD, while those officers are engaged within the course and scope of their employment.

93.     The officers physically deprived McDONOUGH of his freedom and liberty both at the scene of the arrest and continuing at the Miami-Dade County Jail.

94.     McDONOUGH did not consent to the arrest and deprivation of liberty by HPD officers and said actions were against the will of McDONOUGH.

95.     The restraint and arrest of McDONOUGH by HPD officers was unlawful and objectively unreasonable as it was not based on probable cause nor based upon lawfully issued process and was without a valid warrant.

96.     As a direct and proximate result of HPD's actions McDONOUGH suffered both physical and mental injuries and is entitled to relief.

Wherefore the Plaintiff is entitled to:

A.  Compensatory damages for the physical and mental injuries suffered.

B.  Costs of this action.

C.  Any other remedy the Court deems appropriate.

**Demand for Jury Trial**

Plaintiff McDONOUGH hereby demands a trial by jury on all issues triable as a matter of right.

Dated: October 14, 2020

Respectfully submitted,

Alan J. Greenstein, P.A.
8121 S.W. 138th St.
Palmetto Bay, Fl. 33158
Phone: 305- 772-7083
Fax: 305-938-5038
agreenstein004@hotmail.com

By:*/s/ Alan Greenstein*
ALAN GREENSTEIN
Florida Bar No. 237817