UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number: 19-21986-CIV-MORENO**

JAMES ERIC MCDONOUGH,

      Plaintiff,

vs.

CARLOS GARCIA, GARLAND WRIGHT,
individually, and the CITY OF HOMESTEAD,

      Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

James McDonough sued two police officers and the City of Homestead alleging federal civil rights violations stemming from his disruptive attendance at City Hall on July 27 and August 24, 2016 and an arrest for cyberstalking on September 1, 2016. The Court grants summary judgment in favor of Defendants holding that the two law enforcement officers are entitled to qualified immunity. The Court also finds that Plaintiff fails to establish municipal liability as he did not suffer a deprivation of rights. Finally, the Court finds summary judgment is due on the state law false arrest claims as the police had probable cause to arrest Plaintiff for disorderly conduct and cyberstalking. Therefore, summary judgment is granted in favor of Defendants and against Plaintiff on all counts.

## I.    Factual Background

Plaintiff James McDonough's allegations stem from three separate encounters with the City of Homestead's law enforcement on July 27, August 24, and September 1, 2016. The first incident occurred while Plaintiff was speaking before the City Council on July 27, 2016. When

Plaintiff personally directed a comment at Councilman Maldonado, then Sergeant Garland Wright, fearing for the safety of the elected officials, intervened and ordered Plaintiff to leave the meeting and City Hall in accordance with the City's Rules of Decorum. A few weeks later, Plaintiff returned to the City Council meeting on August 24, 2016. Based on Plaintiff's disruptive conduct at the July 27 meeting, the police department issued a trespass warning to Plaintiff precluding him from entering the August 24 City Council meeting. Sergeant Wright advised Plaintiff of the trespass warning when Plaintiff entered City Hall and told him that to regain entry to the City Council meeting Plaintiff needed to put the request in writing.[1] Following an exchange where Plaintiff gave Sergeant Wright his middle finger and threatened to sue, the police arrested Plaintiff on August 24, 2016 for disorderly conduct. After being released, Plaintiff then admittedly posted online comments personally directed at Officer Monaco, where he said he would blast Officer Monaco's address.[2] Detective David Mata arrested Plaintiff for cyberstalking on September 1, 2016.[3] Plaintiff asserts claims under 42 U.S.C. § 1983 for violations of his First and Fourth Amendment rights and under state law for false arrest.

A. *July 27, 2016 Incident*

The City Council allots speakers three minutes to speak to the Mayor and the City Council about any matter of public interest to the speaker. The content of the speakers' three minutes does not need to relate to any topic on the Council's nightly agenda. On July 27, 2016, Plaintiff approached the podium and spoke of the accountability of the Homestead Police Department, complained that Officer Alejandro Murguido falsified a police report concerning an individual named Rosemary Brackett, spoke in favor of police wearing body cameras, stated the

---

[1] McDonough had an extensive prior history of appearances at City Council meetings. He testified that he first spoke at a meeting in January 2015 and then he attended more than half of the meetings from about 2015 to 2017. Plaintiff Depo. Pt. 1 at 30. He added that out of 19 meetings, he attended approximately 12 to 16 during that time period. *Id.* at 36.

[2] Officer Monaco was dismissed from this case.

[3] The Court granted Detective Mata qualified immunity on his motion to dismiss.

Homestead Police Department had rampant nepotism, and complained the Chief of Police

falsified a destruction log and retaliated against a citizen for complaining of his misconduct in

office. Defendant, Garland Wright, was serving as Sergeant at Arms of the meeting. The

Sergeant at Arms is responsible for the enforcement of the Rules of Decorum at City Council

meetings.[4] At the time, Plaintiff had spoken on 12-16 prior occasions about these topics. Plaintiff

Depo. Pt. 1 at 36. The video of the July 27 proceeding was conventionally filed. July 27, 2016

Video (D.E. 62, 94).

After speaking for two and a half minutes, Plaintiff directed a comment to Councilman

Maldonado stating: "The last point I'd like to hit off with is, Mr. Maldonado, you know I'd

appreciate if you got something to say to me, you say it to my face." Perceiving this comment

directed at Councilman Maldonado to be a threat, Sergeant Wright, who was aware of

McDonough's dozen prior visits to City Hall, approached Plaintiff at the podium and ordered

him to leave.

At the time of the incident, Sergeant Wright was an officer for 16 years and had also

served 4 years as a Corrections Officer. He testified that he had personally observed and/or

investigated violent confrontations that were immediately preceded by a challenge for a

statement "to be made to my face." Wright Affidavit at ¶5 (D.E. 64-5). Sergeant Wright viewed

---

[4] iv. In order to ensure that meetings of the City Council may be conducted in a manner that allows the business of the City to be effectively administered, the following rules of decorum shall be followed at all meetings of the City Council:

    (a) No individual shall make slanderous or unduly repetitive remarks, or engage in any other form of behavior that disrupts or impedes the orderly conduct of the meeting, as determined by the Mayor and/or the Sergeant at Arms.

***

    (f) Persons exiting the council chambers shall do so quietly.
    (g) Any individual determined to have violated the Rules of Decorum, as determined by the Mayor or Sergeant at Arms may be required to leave the Council Chambers.
(D.E. 56-6), Plaintiff's Exh. F, City Resolution No. R2016-04-42, 4-5, § iv.

Plaintiff's comment personally directed to Councilman Maldonado to be a violation of the Rules of Decorum. *Id.* at ¶ 7. The City Council had recently changed the Rules of Decorum.[5] The new rules gave discretion to the Sergeant at Arms to determine if a person is disruptive and should be asked to leave.

When Sergeant Wright approached Plaintiff at the podium, Plaintiff had approximately twenty to thirty seconds left to address the City Council. *Id.* at 8-9. Sergeant Wright instructed the Plaintiff to leave the City Council Meeting, in order to put more distance between him and the elected officials and to de-escalate a potentially violent situation. Sergeant Wright did not tell Plaintiff to stop speaking. Wright Affidavit at ¶8-9. Plaintiff had stated that he had a final point to make and was stepping away from the podium when Sergeant Wright approached him. July 27, 2016 Video.

Plaintiff cannot identify what, if anything else, he had intended to say to the City Council. Plaintiff's Depo. Pt. 1 at 86-87. The video shows Sergeant Wright approaching Plaintiff at the podium and pointing toward the door as he asked him to leave. As Plaintiff exited the chamber, he shouted to Sergeant Wright, "I am going to sue the shit out of you dumb ass." July 27, 2016 Video (D.E. 94). Plaintiff states that he walked into the lobby area and stated, "Now we got Homestead police officers again violating the First Amendment rights because they are fucking idiots and they don't know shit. Absolutely ridiculous." *Id.* Sergeant Wright asked him not to be disrespectful as Plaintiff then left City Hall.

B. *The August 24, 2016 Trespass Warning and Arrest*

---

[5] Like the Rules of Decorum, the repealed decorum policy also allowed for "[a]ny person making impertinent or slanderous remarks, or who becomes boisterous while addressing the council," to be "barred from further audience before the council." The repealed policy, however, empowered only the Mayor to decide whether to bar the individual. Plaintiff's Complaint at 13. The Rules of Decorum in effect at the time of the July 27, 2016 meeting gave the Mayor *or* the Sergeant at Arms the discretion to order an individual, who violated the Rules of Decorum, to leave the City Council chamber.

Less than one month later, Plaintiff again went to the City Council meeting on August 24, 2016. In response to the Plaintiff's removal on July 27, Captain Raymond DeJohn, a member of the City's police command staff, inquired with the Miami-Dade State Attorney's Office regarding whether the police department could issue a trespass warning to an individual when that person attempts to return to the premises after the conduct meriting the warning has already occurred. Defendants' Exh. 5, City's Answers to Interrogatory Nos. 2. (D.E. 64-6). DeJohn relayed Plaintiff's disruptive behavior at the City Council meeting to the State Attorney's Office, who advised that police could issue a trespass warning after the fact. The State Attorney's Office confirmed that a basis existed to issue a trespass warning to Plaintiff, based on his actions during the July 27, 2016 City Council Meeting. *Id.* at No. 14 & 15.

There was a meeting by City officials and police to discuss issuing the trespass warning to Plaintiff. The meeting included the Mayor, the City Manager, the Chief of Police, Sergeant Wright, and a city attorney.[6] Wright Depo. of Nov. 3, 2016 at 19-24 (D.E. 56-8). At the meeting, there was agreement that a trespass warning be issued to Plaintiff to preclude his entrance to the City Council meeting on August 24, 2016. Wright Depo. of May 7, 2021 at 29 (D.E. 56-12). The police department is authorized to issue trespass warnings to individuals. Rolle Depo. of March 16, 2021 at 30; Defendants' Exh. 6, § 2-341, City Code of Ordinances (stating that police officers have the authority to "preserve order and maintain the peace and dignity of the city, and to make arrests of offenders against the ordinances and [the City Code]") (D.E. 64-7). The police department based the decision on the Plaintiff's behavior at the July 27, 2016 meeting.

As soon as Plaintiff approached City Hall on August 24, he began recording on his cell phone. Plaintiff's Depo. Pt. 1 at 152; August 24, 2016 Cell Phone Video (D.E. 58). When

---

[6] The Mayor, City Manager, and the Chief of Police have not been sued by McDonough, who chose to sue the police officers and the City of Homestead.

Plaintiff entered City Hall, he was approached by Sergeant Wright, who escorted Plaintiff out of the building. Plaintiff Depo. Pt. 1 at 155:2-6; Plaintiff's August 24, 2016 Cell Phone Video.

Once outside, Sergeant Wright advised Plaintiff that, based on his comments and actions at the last meeting, he had been issued a trespass warning, precluding his entry into the City Council meeting. He told Plaintiff to leave the building and City Hall premises. Sergeant Wright advised Plaintiff he would need to write a letter to request permission to return to City Hall. Plaintiff asked if he could get that in writing and Sergeant Wright indicated there would be a report. August 24, 2016 Cell Phone Video. Plaintiff never wrote a letter, but returned to a City Council meeting in December 2016. Plaintiff's Depo. Pt. 2 at 241-242.

After being ordered to leave, Plaintiff told Sergeant Wright he looked forward to seeing him at a deposition. He began to walk away, gave Sergeant Wright the middle finger, and said "I'm leaving buddy, bye-bye." At the time, Councilman John Burgess was walking into City Hall and two women were exiting City Hall. Plaintiff Depo. Pt. 2 at 211-212; Garcia Depo. at 18. Sergeant Wright testified that Plaintiff was grabbing his genitalia. Plaintiff claims he was holding his camera at his left hip, but admits that "[i]f you are asking could they have misperceived that I was holding my phone and not grabbing my genitals, I can see that that's possible." *Id.* at 214. Based on Plaintiff's conduct, Sergeant Wright ordered him to stop and put his hands behind his back and arrested Plaintiff for disorderly conduct.[7] Wright Depo. of May 7, 2021 at 54. Sergeant Wright testified that the "totality of his behaviors" were cause for the disorderly conduct arrest. *Id.* at 55. Officer Monaco handcuffed Plaintiff and placed him under arrest. Plaintiff Affidavit at ¶ 17.

---

[7] Plaintiff was taken into custody at approximately 5:30 pm and released on bond on August 25, 2016 at 1 pm. Plaintiff Depo. Pt. 2 at 235. The charges were dismissed. Plaintiff Depo. Pt. 2 at 271.

Officer Monaco escorted Plaintiff to Sergeant Carlos Garcia. Plaintiff Depo. Pt. 1 at 180. By the time Plaintiff interacted with Sergeant Garcia, however, Plaintiff was handcuffed and agrees he already knew he was under arrest. Plaintiff Depo. Pt. 1 at 179-182. Nevertheless, Plaintiff testifies that Sergeant Garcia advised Plaintiff that he was the arresting officer and Plaintiff was under arrest for trespass. *Id.* Relying on the information from the other officers, Sergeant Garcia authored the August 24, 2016 arrest reports, as he was the more junior officer on the scene. Plaintiff Depo. Pt. 1 at 177, 179, 180; Garcia Depo. at 12, 15, 31. Sergeant Eric Rayez transported Plaintiff to the Homestead Police Department. *Id.* at 15. Plaintiff was released on bond the next day. Plaintiff Depo. Pt. 2 at 235.

### C. The September 1, 2016 Arrest

A few days after Plaintiff's arrest on August 24, 2016, Plaintiff admittedly posted multiple messages regarding Officer John Monaco on a police blog website. The name of the website is leoaffairs.com. Plaintiff Depo. Pt. 2 at 244. Plaintiff's posts regarding Officer Monaco included the following statements:

> Challenge for the coward. Officer Monaco you stated if the citizens want you to wear a bodycam you will. As 90% of citizens want officers wearing bodycams, I am giving you an opportunity to show you don't lie every time you open you [sic] mouth. I will buy you a cam and pay for the storage, if you will agree to wear it. You can be the beta tester. You can contact me at 571-245-5410 or phd2b05@gmail.com. That is if you are not the giant twat we all think you are. Comeone [sic] show you have an infitestimal [sic] sliver of integrity. A man who is not good for his word, is good for nothing.

> Step up to the plate, big boy. Cower down and run like a sliptail [sic] we are expecting you to be. Also be warned, I have recording devices on me at all times and any further retaliation will be [dealt] with swiftly, [harshly], and lawfully. . .

> Also, I will be blasting your address, so thanks for providing that.

Plaintiff Depo. Pt. 2 at 248, 250; Defendants' Exh. 7, Offense-Incident Report No. 160830-0016, at 3 (D.E. 64-8). As a result of these posts, Officer Monaco became concerned for his family's safety and reported Plaintiff's comments to the City's Internal Affairs Department. *Id.*; Mata Depo. at 15.

Detective Mata investigated Officer Monaco's complaints, which included subpoenas to the police blog, leoaffairs.com, to confirm Plaintiff's authorship, controlled calls with Plaintiff, and consultations with the Miami-Dade State Attorney's Office. Defendants' Exh. 7 at 7; Mata Depo. at 30. Detective Mata spoke to Miami-Dade Assistant State Attorney Hedrick, who advised him that probable cause existed to arrest Plaintiff. *Id.*; Mata Depo. at 34. Plaintiff was arrested on September 1, 2016 for cyberstalking and witness tampering. Defendants' Exh. 7 at 7-8. On September 2, 2016, Miami-Dade Criminal Court Judge Mindy Glazer determined that probable cause existed to arrest Plaintiff for cyberstalking during Plaintiff's bond hearing. Defendants' Exh. 9, Tr. of Sept. 2, 2016 bond hearing at 11 (D.E. 64-10). Plaintiff was released on bond a day later on September 2, 2016. Plaintiff Depo. Pt. 2 at 262-63. The State Attorney's Office did not file charges. *Id.* at 271.

### D. Cross-Motions for Summary Judgment

Defendants move for summary judgment on the Plaintiff's Second Amended Complaint. Plaintiff's claims are as follows: (1) Count 1 is a 42 U.S.C. § 1983 claim against Sergeant Wright for violating Plaintiff's First Amendment rights on July 27, 2016; (2) Count 2 is a § 1983 claim against the City of Homestead under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)[8] for violating the Plaintiff's First Amendment rights on July 27, 2016; (3) Count 3 is a § 1983 claim against Sergeant Wright for violating the Plaintiff's First Amendment rights on August 24, 2016;

---

[8] *Monell* provides the framework for municipal liability in § 1983 cases and states that municipal liability cannot solely be premised on the existence of an employer-employee relationship with a tortfeasor.

(4) Count 4 is a state law false arrest claim against the City of Homestead for the disorderly conduct arrest on August 24, 2016; (5) Count 5 is a § 1983 claim against Sergeant Wright for violating the Plaintiff's Fourth Amendment rights for false arrest on August 24, 2016; (6) Count 6 is a § 1983 claim against Sergeant Garcia for violating the Plaintiff's Fourth Amendment rights for false arrest on August 24, 2016; and (7) Count 7 is a state law false arrest claim against the City of Homestead for actions on September 1, 2016. The individual defendants, Sergeant Wright and Sergeant Garcia are moving for qualified immunity as to Counts 1, 3, 5, and 6. The City moves for summary judgment on the *Monell* claim, Count 2, stating that a final policymaker did not issue the trespass decision. The City also argues the state law false arrest claims in Counts 4 and 7 are also foreclosed as the police had probable cause for the arrests. Plaintiff filed a cross-motion for summary judgment as to all seven counts requesting the Court find Defendants liable as a matter of law.

## II.   Legal Standard

Fed. R. Civ. P. 56 provides, "summary judgment is appropriate where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to judgment as a matter of law.'" *See Alabama v. N. Carolina*, 130 S. Ct. 2295, 2308 (2010) (quoting Fed. R. Civ. P. 56(a)). The existence of some factual disputes between litigants will not defeat an otherwise properly ground motion for summary judgment; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis added). Mere "metaphysical doubt as to the material facts" will not suffice. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251 (1986). The

moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992).

### III.   Legal Analysis

Resolution of the cross-motions for summary judgment requires the Court to examine the doctrine of qualified immunity and municipal liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). In this case, the parties agree that Sergeants Wright and Garcia were acting within their discretionary authority and the Court will need only decide whether the officers violated clearly established law. To resolve Plaintiff's claims against the City of Homestead, the Court will examine whether the Plaintiff can establish a claim for municipal liability based on the decision of a final policymaker. *Id.* at 692-93 (finding that § 1983 "cannot be easily read to impose liability vicariously on governing bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor.").

*A. Qualified Immunity*

Qualified immunity protects state officers from liability under 42 U.S.C. § 1983, unless they violate a statutory or constitutional right that was clearly established at the time the alleged violation took place. *Gilmore v. Hodges*, 738 F.3d 266, 272 (11th Cir. 2013). "The purpose of [qualified] immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit 'all but the plainly incompetent or one who is knowingly violating the federal law.'" *Id.* (quoting *Lee v.*

*Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002) and *Willingham v. Loughnan*, 261 F.3d 1178, 1187 (11th Cir. 2001)).

To establish a qualified immunity defense, "the public official 'must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Lee*, 284 F.3d at 1194). "To act within the scope of discretionary authority means that 'the actions were (1) undertaken pursuant to the performance of [the officer's] duties and (2) within the scope of [his] authority." *Collier v. Dickinson*, 477 F.3d 1306, 1307 n. 1 (11th Cir. 2007) (quoting *Lenz v. Winburn*, 51 F.3d 1540, 1545 (11th Cir. 1995)). Plaintiff does not dispute that the officers were acting within the scope of their discretionary authority.

"Once the official has done so, the burden shifts to the plaintiff to satisfy the following two-pronged inquiry: (1) whether the facts that a plaintiff has shown make out a violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the defendant's misconduct." *Gilmore*, 738 F.3d at 272 (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). The Supreme Court clarified in *Pearson* that courts may exercise their sound discretion in deciding which of the two prongs should be addressed first in light of the circumstances of the case at hand. *Pearson*, 555 U.S. at 236.

"Plaintiffs can meet the clearly established requirement in one of three ways: (1) by pointing to a materially similar decision of the Supreme Court, of [the Eleventh Circuit Court of Appeals], or of the supreme court of the state in which the case arose; (2) by establishing that 'a broader, clearly established principle should control the novel facts' of the case; or (3) by convincing [the court] that the case is one of those rare ones that 'fits within the exception of conduct which so obviously violates th[e] constitution that prior case law is unnecessary.'"

11

*Powell v. Snook*, 25 F.4th 912, 920 (11th Cir. 2022); *Norris v. Hicks*, 855 F. App'x 515, 521 (11th Cir. 2021).

The plaintiff must rely on decisional law to meet either of the first two criteria. *Powell*, 25 F.4th at 920 (citing *Vinyard*, 311 F.3d at 1351) (noting that in the first method we "look at precedent that is tied to the facts" while in the second method we look for "broad statements of principle in case law [that] are not tied to particularized facts") (emphasis omitted). The Eleventh Circuit added that under the second and third criteria, courts should look for "obvious clarity": "a principle or provision so clear that, even without specific guidance from a decision involving materially similar facts, the unlawfulness of the officer's conduct is apparent." *Id.* (citing *Vinyard*, 311 F.3d at 1350–51) (noting that "broad statements of principle in case law . . . can clearly establish law applicable in the future to different sets of detailed facts" and that the "words of the pertinent federal statute or federal constitutional provision in some cases will be specific enough to establish clearly the law applicable to particular conduct and circumstances"). In all three methods, the "'salient question' is whether the state of the law at the time of the incident gave [the officer] 'fair warning' that his conduct was unlawful." *Id.* (quoting *Perez v. Suszczynski*, 809 F.3d 1213, 1222 (11th Cir. 2016)) (additional citations omitted).

    1. *Counts 1 and 3: § 1983 Claims for First Amendment Violation against Wright*
      a. *July 27, 2016 Incident*

Sergeant Wright has moved for qualified immunity to shield him from liability for his actions on July 27, 2016 when he ordered Plaintiff to leave the City Council meeting approximately two and a half minutes into his three-minute speech. Plaintiff's burden is to show that Sergeant Wright's actions violated clearly established law.

Generally, city commission meetings are "limited' public fora" meaning that a city can place limits on public commentary. *Rowe v. City of Cocoa, Fla.*, 358 F.3d 800, 802 (11th Cir.

2004). "As a limited public forum, a city council meeting is not open for endless public commentary speech but instead is simply a limited platform to discuss the topic *at hand*." *Id.* at 803. In this case, the City Resolution allowing for public comment allowed speakers to sign into the meeting ahead of time, and to speak to the council on any matter pertaining to City business for up to three minutes. The City's Rules of Decorum set forth a structure to both hear members of the community and to move meetings along efficiently.

Content-neutral time, place, and manner restrictions, such as those in place by the City of Homestead, are permissible if they are narrowly drawn to achieve a significant governmental interest and if they allow communication through other channels. *Jones v. Heyman*, 888 F.2d 1328, 1331-32 (11th Cir. 1989) "The Supreme Court has recognized the significance of the government's interest in conducting orderly, efficient meetings of public bodies." *Id.* (citing *City of Madison, Joint Sch. Dist. v. Wisconsin Employment Relations Comm'n*, 429 U.S. 167, 176 n.8 (1976)). The question in this case is whether Sergeant Wright's decision to order Plaintiff to leave was a content-neutral time, place, and manner restriction narrowly tailored to achieve that interest.

In *Jones v. Heyman*, the Mayor expelled the plaintiff from the meeting and the issue was whether the Mayor's actions stemmed from disapproval of the plaintiff's message or from the plaintiff's disruptive conduct and failure to adhere to the agenda item under discussion. The plaintiff in that case stated to the mayor "[i]f you can't stay germane in your mind, that's your problem, not mine." *Id.* at 1329. When the plaintiff was warned that further outbursts would result in removal, he responded to the mayor "I don't think you are big enough." *Id.* The mayor testified that the plaintiff's "disruptive behavior would worsen if ignored, that [plaintiff] presented a possible threat of violence to the commission, and that [plaintiff] questioned the

mayor's authority to preside over the meeting." *Id.* at 1332. The Eleventh Circuit found that the plaintiff failed to establish that the expulsion was content-based, rather than from the need to continue the orderly progression of an already lengthy commission meeting. *Id.*

Like in *Jones,* the meeting's Sergeant-at-Arms, Wright, claims he was charged under the City's Rules of Decorum with maintaining an orderly meeting. In keeping with that duty, Sergeant Wright, like the mayor in *Jones*, perceived Plaintiff's comments directed to Councilman Maldonado to be a threat. Plaintiff stated that if Councilman Maldonado had something to say to "say it to his face." Like in *Jones*, there is a significant government interest in preserving the orderly administration of a government meeting. Surely, Sergeant Wright, like the mayor in *Jones*, was concerned the "disruptive behavior would worsen if ignored." *Id.* Given that the Plaintiff spoke for almost the entirety of his allotted time and had spoken on prior occasions on the same topics, there is nothing in this record to support a conclusion that the decision to ask him to leave was based on the content of his speech and not what he said to the Councilman, which could lead to a greater disruption of the meeting.

The next issue is whether the expulsion from the meeting was narrowly tailored to achieve the interest in an orderly meeting. "[T]he requirement of narrow tailoring is satisfied 'so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.'" *Id.* at 1334 (quoting *Ward v. Rock against Racism*, 491 U.S. 781, 799-800 (1989)). The Eleventh Circuit in *Jones* found that it was not its role to second-guess the mayor's decision, but rather whether it was plausible that the plaintiff in *Jones* would have delayed the meeting or continued to wander from the subject in question. "This is a judgment call that a presiding officer and parliamentarian must make without the benefit of

leisure reflection. An erroneous judgment call on the part of a presiding officer does not automatically give rise to liability for a constitutional tort." *Id.* at 1334.

In this case, the Plaintiff admitted that he understood why Sergeant Wright perceived his speech to be a threat. Unquestionably, the statement personally directed at Councilman Maldonado was disruptive. Plaintiff had already almost completed his allotted time and spoken about all the matters he wished to raise. Indeed, he stated that he was on his "last point." The video shows that Plaintiff was pulling away from the podium as Sergeant Wright approached him. Sergeant Wright asked Plaintiff to leave but did not order him to stop speaking. The video evidence shows that Plaintiff continued to speak as he exited the chamber and as he walked outside. Finally, the record shows that Plaintiff had discussed these matters on other occasions, having participated in 12 to 16 prior City Council meetings. Plaintiff also participated in meetings after the July 27, 2016 incident. Plaintiff Depo. Pt. 1 at 36, 38; *Jones*, 888 F.2d at 1334 (stating that there must be alternative channels of communication to avoid a First Amendment violation).

The Court finds that Sergeant Wright did not violate clearly established law when ordering Plaintiff to leave the July 27, 2016 meeting. Like the Eleventh Circuit in *Jones*, the Court cannot second-guess his decision to maintain an orderly meeting in view of a statement that even Plaintiff admits could be perceived as a threat and is, at the very least, disruptive. The order to leave was near the tail-end of Plaintiff's allotted time and did not preclude Plaintiff from continuing to speak as he exited the chamber. Notably, a plaintiff's protected speech is only adversely affected "if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Bennett v. Hendrix*, 423 F.3d 1247, 1254 (11th Cir. 2005). This is an objective analysis, which "allows for a 'weeding out'

function when the injuries complained of are trivial or amount to no more than a *de minimus* inconvenience in the exercise of First Amendment rights." *Id.* at 1253. Not only was Plaintiff's speech objectively not adversely affected, indeed he spoke as he exited the chamber, but also any alleged First Amendment violation, is *de minimus* as Plaintiff stated he was on his "last point" and cannot recall what else he wanted to discuss. Accordingly, the Court finds that Plaintiff has failed to meet his burden to show Sergeant Wright violated clearly established law on July 27, 2016 and he is entitled to qualified immunity for Count 1. The Court denies the Plaintiff's motion for summary judgment on Count 1.

Plaintiff cites to two cases to state that the clearly established law precluded Sergeant Wright from ordering him to leave. These cases post-date the incident in this case and therefore, are inapplicable in a qualified immunity analysis. *Watkins v. Cent. Broward Reg'l Park*, 799 F.App'x 659 (11th Cir. 2020); *United States v. Baker*, No. 4:21-mj-09-MAJ, 2021 WL 318311 (N.D. Fla. Jan. 25, 2021).

### b.  *August 24, 2016 Incident*

Count 3 against Sergeant Wright is based on the trespass warning issued to Plaintiff on August 24, 2016, when he sought to enter the City Council meeting only 3 and a half weeks after his outburst on July 27, 2016. Sergeant Wright moves for qualified immunity on this claim arguing that he did not violate clearly established law and that he relied on the advice of the Miami-Dade State Attorney's Office in enforcing a trespass warning as to the Plaintiff.

Having previously found that the City Council meeting is a limited public forum with a significant interest in conducting orderly and efficient meetings, the Court must examine whether the trespass warning is a content-neutral time, place and manner restriction narrowly tailored to serve that significant governmental interest. The police department issued, and Sergeant Wright enforced, a trespass warning precluding Plaintiff from entering the meeting because of Plaintiff's

recent disruptive behavior as he left the City Council meeting. There is no record evidence that this decision was content-based. Indeed, the record shows the Plaintiff had participated and spoken on the same topics on 12-16 prior occasions. The undisputed record evidence shows that Plaintiff did not leave the chamber quietly, as required by the Rules of Decorum. Indeed, the Plaintiff agreed at his deposition that he said to Sergeant Wright: "I am going to sue the shit out of you, you dumb ass." He admits that people in the chamber could hear him. Plaintiff Depo. Pt. 1 at 92. The video of this incident shows the Plaintiff said this as he was exiting the chamber. Video of July 27, 2016 (D.E. 94). Plaintiff's comment can be easily heard on the video taken inside the City Council chamber. Plaintiff also said out loud that "[w]ell, now we have Homestead police officers again violating the First Amendment because they are fucking idiots, and don't know shit." Plaintiff Depo. Pt. 1 at 94.

Given this unruly and disruptive behavior on July 27, the Mayor, City Manager, Police Chief Rolle, Sergeant Wright and others met to discuss appropriate measures. Undisputedly, the police department has the authority to issue a trespass warning in this context to prevent disorderly conduct at a government meeting -- a decision that is consistent with the Rules of Decorum. The record supports the conclusion that the trespass warning was based on Plaintiff's unruly behavior weeks earlier at the July 27 meeting and there is no record evidence to suggest it was a content-based decision.

Having found the decision to be content-neutral, the Court must examine if the trespass warning was narrowly-tailored. "[T]he requirement of narrow tailoring is satisfied 'so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.'" *Jones*, 888 F.2d at 1334 (quoting *Ward v. Rock against Racism*, 491 U.S. 781, 799-800 (1989)). To that end, the trespass warning issued to Plaintiff, who weeks before

disrupted a City Council meeting with cursing and threats of litigation, promotes the substantial government interest of maintaining an orderly meeting. Sergeant Wright also provided the parameters under which Plaintiff could gain readmission. This is not a case where Plaintiff could not request readmission to the meeting. In fact, Sergeant Wright told Plaintiff he simply needed to put the request in writing and that there would be a police report. Although Plaintiff did not comply with the order by submitting a written request for readmission, he was nevertheless able to return to the City Council meeting in December 2016. Sergeant Wright did not violate clearly established law when he enforced the trespass warning and provided procedures for the Plaintiff to return to City Hall.

The Eleventh Circuit case law is also clear that although a city hall is a government building, the public does not have a constitutional right to visit City Hall "under all circumstances and at all times." *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1267 n.5 (11th Cir. 2011); *Bloedurn v. Grube*, 631 F.3d 1218, 1230 (11th Cir. 2011) ("It is by now clear that the First Amendment does not guarantee access to property just because it is owned by the government."); *Peery v. City of Miami*, 977 F.3d 1061, 1071 (11th Cir. 2020) ("Police often ask individuals to temporarily leave public spaces, and doing so does not create a constitutional deprivation."). Certainly, the decision to preclude Plaintiff from entering a City Council meeting weeks after his outburst does not violate clearly established law, where the Eleventh Circuit has authorized local governments to limit access as long as a trespass warning provides a procedure "for the recipient of a trespass warning to challenge the warning." *Catron*, 658 F.3d at 1267.

Even if the trespass warning was not narrowly tailored, *Poulakis v. Rogers*, 341 F. App'x 523, 533 (11th Cir. 2009) states that an officer may reasonably rely on a "pre-arrest consultation and advice of a district attorney." In *Poulakis*, the Eleventh Circuit found an officer had qualified

immunity when he relied on the advice of the assistant state attorney to determine whether probable cause supported an arrest. "As a practical matter, it is altogether consistent with the totality of the circumstances analysis to consider pre-arrest consultation and advice of a district attorney as being one circumstance contributing to the objective reasonableness of an officer's conduct." The record here is undisputed that the police department, through DeJohn, sought legal advice from the State Attorney's Office to determine if the police department could issue a trespass warning to Plaintiff based on his conduct at the July 27, 2016 meeting. The State Attorney's Office confirmed that there was probable cause to issue the order. DeJohn described to the State Attorney's Office the Plaintiff's behavior at the council meeting, specifically, his use of foul language and his threat to sue Sergeant Wright. The State Attorney's Office told DeJohn that the City of Homestead police could issue the trespass warning to Plaintiff based on his disruptive behavior. DeJohn Depo. at 12. The opinion of the State Attorney's Office should be considered in the mix of examining the question of qualified immunity. The record shows the advice was based on a fair description of Plaintiff's conduct and was the kind that an objectively reasonable officer could consider reliable.

Based on the totality of the circumstances, the Court grants Sergeant Wright qualified immunity. His enforcement of the police department's trespass warning did not violate clearly established law. The trespass warning was narrowly tailored to serve a significant governmental interest in fostering an orderly meeting and it set forth the parameters under which Plaintiff could regain admission to the City Council meeting. The Court also finds that the police department's reliance on legal advice from the State Attorney's Office is an important factor, which tips the scale in favor of finding Sergeant Wright is entitled to qualified immunity.

2. *Counts 5 and 6: § 1983 Claims for Fourth Amendment Violation against Wright and Garcia*

Counts 5 and 6 stem from Plaintiff's arrest on August 24, 2016. Plaintiff claims Sergeant Wright and Sergeant Garcia violated clearly established Fourth Amendment law when they arrested him for disorderly conduct on August 24, 2016. The undisputed facts show Plaintiff threatened to sue Sergeant Wright, and stuck up his middle finger to the officers after receiving the trespass warning as he walked away. Plaintiff admits that as he was holding his video camera, the officers also could have perceived him to be grabbing his genitalia. At the time of this August 24, 2016 incident, there were two women in the parking lot and one councilmember walking into the building. Of course, this conduct was on the heels of his outburst a few weeks earlier at the City Council meeting where he cursed and threatened to sue Sergeant Wright.

A warrantless arrest without probable cause violates the Constitution and forms the basis of a § 1983 claim. Conversely, if an arrest is supported by probable cause, the arrestee is absolutely barred from pursuing a § 1983 false arrest claims. Probable cause exists "if, 'at the moment the arrest was made, 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing' that the suspect had committed or was committing an offense." *Holmes v. Kucynda*, 321 F.3d 1069, 1079 (11th Cir. 2003) (distinguished on other grounds by *Williams v. Aguirre*, 965 F.3d 1147 (11th Cir. 2020)).

To receive qualified immunity protection, an officer "need not have actual probable cause but only '*arguable probable cause.*'" *Id.* (quoting *Montoute v. Carr,* 114 F.3d 181, 184 (11th Cir.1997)). Arguable probable cause exists when "an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed." *Durruthy v. Pastor*, 351 F.3d 1080, 1089 (11th Cir. 2003) (quoting *Montoute*, 114 F.3d at 184). Arguable probable

cause does not require an arresting officer to prove every element of a crime or to obtain a confession before making an arrest, which would negate the concept of probable cause and transform arresting officers into prosecutors." *Id.* at 1089 (quoting *Lee*, 284 F.3d at 1195) (additional citations omitted).

The Court finds that Sergeant Wright and Sergeant Garcia had arguable probable cause to make the arrest. Although Plaintiff argues that the law is clearly established that giving the middle finger to an officer is insufficient to support a disorderly conduct charge, Sergeant Wright had witnessed Plaintiff's behavior on July 27, 2016. With that knowledge, a reasonably prudent officer would believe that Plaintiff would further escalate the situation. In *Gold v. City of Miami*, 121 F.3d 1442 (11th Cir. 1997), the Eleventh Circuit found officers had arguable probable cause to arrest a plaintiff for disorderly conduct when the plaintiff used profanity loudly twice in the presence of others. "What constitutes legally proscribed disorderly conduct is subject to great subjective interpretation of specific facts – for example, the words used, the tone used, the decibels used, and the reaction of onlookers—[the court is] constrained to conclude that a reasonable officer in the same circumstances and possessing the same knowledge as the officers in this case could have reasonably believed that probable cause existed to arrest [Plaintiff] for disorderly conduct." *Id.* Here, Sergeant Wright had witnessed Plaintiff's belligerent behavior firsthand weeks earlier. Plaintiff undisputedly used profanity and threatened to escalate the interaction with Sergeant Wright and the police on August 24, 2022. In this context, the Court will not say that Sergeant Wright and Sergeant Garcia violated clearly established law when arresting Plaintiff for disorderly conduct.[9]

---

[9] Plaintiff argues that *Gold* actually put officers on notice that there was no actual probable cause to arrest in a case of profanity. The standard for qualified immunity, however, is arguable probable cause, which when applied in this case entitles the officers to qualified immunity.

In addition, the Court finds that Sergeant Garcia is entitled to qualified immunity as he was not the officer who instigated the arrest. The record evidence shows that Sergeant Wright instructed Plaintiff to stop and put his hands behind his back, Officer Monaco handcuffed Plaintiff, and Sergeant Garcia authored the arrest report. Sergeant Garcia was at City Hall at the time of the incident but was not at the scene of the disorderly conduct. He relied on the information from the other officers to write the arrest report. Plaintiff admits that by the time he interacted with Sergeant Garcia, he already knew he was under arrest. Sergeant Garcia escorted the Plaintiff to a police vehicle for his transport.

"The Eleventh Circuit held that an officer who does not participate in the actual arrest or who was not in the chain of command supervising the arresting officer cannot be liable for false arrest under § 1983." *Diaz v. Miami-Dade Cty.*, 424 F. Supp. 3d 1345, 1357 (S.D. Fla. 2019), *aff'd Diaz v. Miami-Dade Cty.*, 849 F. App'x 787 (11th Cir. 2021). Here, the record is undisputed that Sergeant Garcia did not participate in the actual arrest. The actual arrest was done by Sergeant Wright and Officer Monaco. Sergeant Garcia was also not a supervising officer in the chain of command. Rather, Sergeant Garcia obtained the information from the arresting officers to write the arrest report. Accordingly, the Court grants Sergeant Garcia's motion for qualified immunity on these additional grounds. Having found Sergeant Wright and Garcia are entitled to qualified immunity, the Court denies the Plaintiff's motion for summary judgment.

**B.   Count 2: 42 U.S.C. § 1983 Monell claim against the City for violating the Plaintiff's First Amendment Rights**

Count 2 of the complaint alleges a violation of the Plaintiff's First Amendment rights by the City of Homestead pursuant to *Monell*. The Supreme Court has imposed strict limitations on municipal liability under § 1983. *Grech v. Clayton Cty.*, 335 F.3d 1326, 1329 (11th Cir. 2003); *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). To impose liability against the

City, Plaintiff must demonstrate: (1) that his constitutional rights were violated, (2) that the City had a custom or policy that constituted deliberate indifference to those constitutional rights, and (3) that the policy or custom caused the violation. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

Under a final policymaker theory, "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). To establish "liability under the final policymaker theory of municipal liability, 'the challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in that area of the city's business.'" *Gomez v. Metro Dade Cty.*, 801 F. Supp. 674, 677 (S.D. Fla. 1992)(quoting *City of St. Louis v. Praprotnik* 485 U.S. 112, 123 (1988)). A municipality can be held liable on the 'basis of ratification when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority." *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016) (quoting *Matthews v. Columbia Cty.*, 294 F.3d 1294, 1297 (11th Cir. 2002)).

A plaintiff "must identify those officials who speak with final policymaking authority for that local governmental entity concerning the act alleged to have caused the particular constitutional violation in issue." *Grech*, 335 F.3d at 1330 (11th Cir. 2003) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). Determining whether the employee has final policymaking authority is a decision for the judge. *Jett*, 491 U.S. at 737.

The threshold issue is whether Police Chief Rolle is the final policymaker and is "vested with finality of authority in his decisions." *Villanueva v. City of Fort Pierce*, 24 F. Supp. 2d 1364, 1369 (S.D. Fla. 1998). The Eleventh Circuit has stated that a municipal official is not a

final policymaker if those decisions are subject to meaningful review. *Id.* The City Manager George Gretsas testified that the City left the decision as to issues such as this trespass warning, up to the police department. Gretsas Depo. at 55 ("[T]hese decisions are within the discretion of the police department[.]"); Rolle Depo. at 30. The City's ordinance gave similar authority to the police department. Defendants' Exh. 6, § 2-341, City Code of Ordinances (stating that police officers have the authority to "preserve order and maintain the peace and dignity of the city, and to make arrests of offenders against the ordinances and [the City Code]") (D.E. 64-7). Chief Rolle, Sergeant Wright, along with the City Manager and other City officials, were present at the August 24 meeting where the trespass warning was discussed and decided. The Court finds there is sufficient record evidence to find that the police department and its head Police Chief Rolle is the final policymaker. It is undisputed that Police Chief Rolle is in charge of the police department, and there is no evidence that another city official was vested with the ultimate decisionmaking authority in this regard.

Even if Chief Rolle did not make the decision, and Sergeant Wright did, "[l]ocal government liability can exist when someone with final policymaking authority delegates that authority to someone else. But, the delegation must be such that the decision is not subject to review by the policymaking authority." *Matthews*, 294 F.3d at 1297. Even if Police Chief Rolle delegated Sergeant Wright to make the decision, there is no record evidence that Sergeant Wright's decision was subject to review.

Having found the Police Chief or his delegate, Sergeant Wright, had final policymaking authority, the Court must next decide if the decision caused a deprivation of rights. The Court finds the trespass order did not cause a violation of Plaintiff's First Amendment rights. To reiterate, the City did not violate Plaintiff's First Amendment rights where the trespass warning

was narrowly tailored to serve the significant governmental interest of conducting orderly meetings. The Eleventh Circuit has authorized local governments to limit access to government buildings as long as a trespass warning provides a procedure "for the recipient of a trespass warning to challenge the warning." *Catron*, 658 F.3d at 1267. Moreover, it is not the role of this Court to second-guess the police department's decision to issue a trespass warning to Plaintiff, but rather this Court's inquiry is whether it is plausible that the plaintiff would have delayed the meeting or disrupted the meeting absent the trespass warning. "This is a judgment call that a presiding officer and parliamentarian must make. . . An erroneous judgment call on the part of a presiding officer does not automatically give rise to liability for a constitutional tort." *Jones*, 888 F.2d at 1334. Certainly, it is feasible that Plaintiff would have again disrupted the meeting absent the trespass order. Accordingly, the Court finds no deprivation of First Amendment rights and grants the City's motion for summary judgment.

### C. Counts 4 & 7: State Law False Arrest Claims against the City of Homestead

The state law false arrest claims turn on the existence of probable cause. "Probable cause is an affirmative defense to a false arrest claim." *Mailly v. Jenne*, 867 So. 2d 1250, 1251 (Fla. 4th DCA 2004). Probable cause exists when the circumstances are sufficient to cause a reasonably cautious person to believe that the person accused is guilty of the offense charged. *Id.* (quoting *Fla. Game & Freshwater Fish Comm'n v. Dockery*, 676 So. 2d 471 474 (Fla. 1st DCA 1996)). "Probable cause must be judged by the facts that existed at the time of the arrest, not evidence subsequently learned or provided to the prosecution." *Miami-Dade Cty. v. Asad*, 78 So. 3d 660, 669-70 (Fla. 3d DCA 2012).

### A. August 24, 2016 Arrest for Disorderly Conduct

This Court has already determined the officers had arguable probable cause to arrest Plaintiff for disorderly conduct. Florida Statute § 877.03 provides that "[w]however commits

such acts . . .to constitute a breach of peace or disorderly conduct, shall be guilty of a misdemeanor of the second degree." A "violation of the disorderly conduct law largely depends on the facts and circumstances of each case, noting that 'it is the degree of loudness, and the circumstances [under] which [the speech is] uttered, [that] takes [it] out of the constitutionally protected area.'" *Gold*, 121 F.3d at 1446 (quoting *Morris v. State*, 335 So. 2d 1, 2 (Fla. 1976)). "The fact-intensive nature of the constitutional inquiry accounts for the varying views in the Florida appellate courts of what constitutes legally proscribed disorderly conduct." *Id.* Given the prior interaction between Sergeant Wright and Plaintiff, Plaintiff's cursing, Plaintiff's multiple threats to sue Sergeant Wright, and Plaintiff's demeanor, which showed a desire to escalate the altercation, the Court finds Sergeant Wright had probable cause to arrest Plaintiff for disorderly conduct on August 24, 2016. The Court grants the City's motion for summary judgment on the state law false arrest claim in Count 4 and denies the Plaintiff's motion for summary judgment.

### B. September 1, 2016 Arrest for Cyberstalking

The Court has also determined that Detective Mata had probable cause to arrest Plaintiff for cyberstalking. He relied on the opinion of the State Attorney prior to making the arrest after completing his investigation. Plaintiff admitted to writing multiple posts directed at Officer Monaco. He accused Officer Monaco of being a coward and a liar and states he will blast Officer Monaco's home address. Officer Monaco was concerned for his family's safety.

Florida's cyberstalking statute, section 784.04, Fla. Stat., defines cyberstalking as engaging in a "course of conduct to communicate, or to cause to be communicated, words, images, or language by or through the use of electronic mail or electronic communication, directed at a specific person, causing substantial emotional distress to that person and serving no legitimate purpose." Under this definition, the Court agrees the officer had probable cause to

arrest the Plaintiff for cyberstalking.  Accordingly, the Court grants summary judgment on Count

7 in favor of the City and denies the Plaintiff's motion for summary judgment.


DONE AND ORDERED in Chambers at Miami, Florida, this ___30___ of March 2022.


_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE


Copies furnished to:

Counsel of Record